William J. Jovan and Constantine J. Jovan, Administrators of the Estate of James J. Jovan, Deceased, Plaintiffs-Appellees, v. John Starr (a/k/a John Staroyiannis), Defendant and John J. Yowell, Defendant-Appellant.

Gen. No. M–51,525.

First District, First Division.

October 9, 1967.

Yowell and Cessna, of Chicago, for appellant.

Simon, Teitelbaum & Wolfberg, of Chicago, for appellees.

MR. JUSTICE ADESKO delivered the opinion of the court.

The administrators of the estate of James N. Jovan brought this action against John Starr (Starr) and John J. Yowell (Yowell) for the return of $2,000 which Starr, acting as agent for plaintiff, had deposited with Yowell acting as escrowee. (We shall refer to James N. Jovan as plaintiff.)

The court found the issues against both defendants and entered judgment for the administrators in the sum of $2,000. Defendant Yowell's motion for a new trial was denied and he now prosecutes this appeal.

On December 30, 1957, plaintiff, one Alexander G. Chiagouris (Chiagouris) and Starr entered into an agreement whereby plaintiff and Chiagouris each advanced $2,000

to Starr, and Starr agreed to use the funds as earnest money to attempt to purchase all the outstanding stock of Terrace Restaurant, Inc., (Terrace Inc.,). Plaintiff and Chiagouris were to remain as undisclosed principals of Starr. The agreement provided inter alia that if Terrace Inc., already in financial difficulty, went into bankruptcy prior to Starr's acquiring the corporation's stock, the earnest money was to be returned to plaintiff and Chiagouris.

The stock of Terrace Inc., was being held by defendant Yowell, the corporation's attorney. Starr met with Yowell and negotiated for the purchase of the stock. An agreement, in the form of a letter, addressed to the then stockholders of Terrace Inc., and dated December 31, 1957, was then executed. One of those stockholders was James N. Jovan, one of Starr's undisclosed principals and plaintiff herein.

The letter agreement first stated the price to be paid for the stock and then provided:

> "I have deposited with John J. Yowell the sum of $4,000 as earnest money and to apply on the purchase price.
>
> "In the event that the creditors of the corporation are unwilling to make a settlement of their claims and the corporation is placed in bankruptcy, said earnest money is to be returned to me.
>
> Yours very truly,<br>/s/ John Starr
>
> "Received check on Pullman Trust & Savings Bank in the sum of $4000.00 signed by John Starr, to be held by me in accordance with the above letter.
>
> /s/ John J. Yowell by<br>L. J. Vance"

(L. J. Vance was an employee of Yowell's and there is no question that she was authorized to sign his name.)

■

Subsequently, in March 1958, Terrace Inc., was involuntarily placed in bankrupty. Although at the trial there was some testimony as to whether Starr had defaulted prior to the bankruptcy, this issue has been abandoned on appeal. Defendant Yowell contends that: (1) plaintiff's claim is barred by the Statute of Limitations and; (2) that he has a retaining lien on the earnest money for his legal services to Terrace Inc., plaintiff being a stockholder of the corporation.

With respect to the suit being barred by the Statute of Limitations, Yowell argues that absent a writing signed by defendant Yowell, plaintiff's claim, if any, must be controlled by the five year statute of limitations. (Ill Rev Stats 1965, c 83, § 16.) Since the money was deposited with Yowell on December 31, 1957, and the instant action was not commenced until March 20, 1963, it is barred. The only writing signed by Yowell is the letter agreement executed by Starr. Since this does not mention plaintiff, it cannot be relied upon by him to bring this action within the ten year statute of limitations. (Ill Rev Stats 1965, c 83, § 17.)

■ We do not agree with Yowell's analysis. The letter agreement signed by Yowell is a sufficient writing to place a claim for a return of the earnest money under the ten year statute of limitations. The fact that plaintiff is not mentioned in the letter agreement is immaterial. In Saladin v. Mitchell, 45 Ill 79 (1867), our Supreme Court stated:

> "It is insisted by the plaintiff in error, that the only contract of sale is the one . . . made by another person, to wit, T. D. Hall. He contends it was a contract with Hall, and he alone can maintain an action for its breach. The authority referred to on this point in 2 Smith's Leading Cases, 358, applies to cases where a purchase is made by an agent, his principal not being disclosed. In such cases it is the established rule, where the contract is not under

seal, and made by an agent in his own name for an undisclosed principal, either the agent or the principal may sue on it." (P 82.)

See also Mechem, Law of Agency, Fourth Edition, § 150 (1952):

"The rights of the undisclosed principal, and the method of their enforcement, differ very little from those of the disclosed principal. He sues in his own name and right; when his existence is disclosed it is in general the obligation of the third party to treat him as in all regards the principal. He may sue for breach of the contract and ordinarily, as will be seen later, T may not successfully set up as a defense that he knew neither of P's existence nor his connection with the contract."

The other point raised by defendant Yowell is that plaintiff, as a stockholder in Terrace Inc., was obligated to pay Yowell his fees for legal services to the Corporation and had in fact agreed to pay such fees. Consequently, Yowell had a retaining lien on the funds which came into his possession through plaintiff's agent.

We recognize that attorneys' liens are classified as general (or retaining) liens and charging (or special) liens. The latter is a lien upon that which is recovered by an attorney for his client through his professional services and is generally covered by the Attorney's Lien Act. (Ill Rev Stats 1965, c 13, § 14.) This type of lien is not involved in the instant cause.

The retaining lien was first recognized in Illinois in Sanders v. Seelye, 128 Ill 631, 21 NE 601 (1889):

"(T)his retaining lien exists on all papers or documents of the client placed in the attorney's hands in his professional character or in the course of his employment." (Pp 637–638.)

354

In the case of Needham v. Voliva, 191 Ill App 256 (1915), this court stated:

"(A) possessory or retaining lien . . . is defined as the attorney's right to retain possession of property belonging to his client which comes into his hands within the scope of his employment until his charges are paid. Weed Sewing Mach. Co. v. Boutelle, 56 Vt 570. If the relationship of attorney and client exists, the possessory lien will cover in general any property of any kind belonging to the client and held by the attorney. It includes ordinary legal documents of the client in the possession of the attorney, or money collected by the attorney. 4 Cyc 1015. The possessory lien is a right merely to retain and cannot be actively enforced." (Citations omitted.) (P 258.)

■ From the above citations, it appears to us that it is essential to the existence of a retaining lien that the papers or securities be received by the attorney pursuant to an attorney-client relationship. Thus the question which must be answered in the instant case is whether the funds Yowell received from Starr were in furtherance of Yowell's professional relationship with plaintiff. We believe the evidence requires that this question be answered in the negative.

■ Plaintiff had entered into a joint venture with two other persons. Starr was to act on their behalf. The money Starr deposited with defendant Yowell was from all outward appearances Starr's money. Yowell admitted that he was not aware until a later date that plaintiff was in any manner connected with Starr. It is thus clear with regard to the deposit of money, that no attorney-client relationship existed between plaintiff and Yowell. Furthermore, Yowell held the money only in the capacity of escrowee. Under the letter agreement he was either to

355

deliver the stock to Starr or return his earnest money deposit. Although Yowell may have been performing some legal services, in relation to the earnest money deposit, he was only a depository. Therefore, Yowell had no right to claim a retaining lien on the earnest money deposit and such funds must be returned to plaintiff's administrators.

■ Our attention is directed to the recent case of Estate of Bort, 75 Ill App2d 322, 221 NE2d 24 (1966), where an attorney who held his client's money was held to be entitled to a hearing on his claim for fees for legal services. It is clear that there was an attorney-client relationship between the parties in the Bort case. Therefore, Bort is inapplicable to the instant cause since such a relationship did not exist with respect to the earnest money.

In plaintiff's brief it is claimed that Yowell's refusal to return the earnest money was a conversion and the trial judge erred in not allowing him interest from the date of the conversion. This cross-appeal is governed by Supreme Court Rule 35 (Ill Rev Stats 1965, c 110, § 101.35) which provides as follows:

> "Each appellee who desires to prosecute a cross appeal from all or any part of the judgment, decision, order or decree, . . . shall within 10 days after service upon him of notice of appeal, serve a notice upon each party or attorney or firm of attorneys who signed the notice of appeal, and upon each appellee, person or officer entitled to receive notice of an appeal, and file a copy thereof in the trial court."

In Bawden v. Furlong, 16 Ill App2d 174, 147 NE2d 889 (1958), it was stated:

> "An appellee who desires to prosecute a cross appeal from all or any part of an order must serve

and file a notice of cross appeal; the notice of cross appeal must be substantially in the form required for an appellant's notice of appeal; the notice must specify and describe the order appealed from and if the cross appeal is from a part thereof only it must specify which part: Supreme Court Rules 33 and 35,—Ch 110 Ill Rev Stats, 1955, pars 101.33, 101.35. There seems to be no way provided for an appellee to appeal from an order other than by cross appeal: Heine v. Degen (1936) 362 Ill 357. A notice of cross appeal is mandatory if the appellee desires to appeal, and unless given the matters sought to be reviewed are not preserved for review and decision by this Court: Apperson v. Hartford Accident & Indemnity Co. (1944) 322 Ill App 485; Scribner v. Village of Downers Grove (1940) 372 Ill 614; Bryant v. Lakeside Galleries, Inc. (1949) 402 Ill 466; Holmes v. Rolando (1943) 320 Ill App 475." (P 185.)

■ The record before us does not disclose any notice of cross-appeal and therefore the issue of whether interest is allowable is not properly before us.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

MURPHY, P. J. and BURMAN, J., concur.